Edward James STEEN, Plaintiff,

v.

COUNTY COUNCIL OF SUSSEX COUNTY and William D. Stevenson, Sr., George B. Cole, Oliver E. Hill, Ralph E. Benson and R. James Mariner, individually as well as members of County Council, Defendants.

Civ. A. No. 1346.

Court of Chancery of Delaware, Sussex County.

Submitted: May 17, 1989.
Decided: Nov. 1, 1989.

---

Richard F. Stokes, John A. Sergovic, and Sarah Richardson, Tunnell & Raysor, Georgetown, for plaintiff.

Robert V. Witsil, Jr., Legal Counsel to Sussex County, Georgetown, for defendants.

## OPINION

HARTNETT, Vice Chancellor.

In this action the plaintiff, Edward J. Steen, challenges the denial of his application for a Conditional Use Permit by the Sussex County Council. The plaintiff seeks an injunction, declaratory judgment and damages and both sides have moved for summary judgment. I find that defendants' motion for summary judgment must be granted because, as a matter of law, the denial of the application was not arbitrary and capricious.

### I

The material facts are not disputed. The plaintiff, Edward J. Steen, owns a 73–acre tract of land located outside of Dagsboro, Sussex County, Delaware. Mr. Steen's land is situated in an area that is zoned AR–1, Agricultural–Residential District ("AR–1 District") pursuant to Sussex County's Comprehensive Zoning Ordinance.

For the last eight to twelve years, Mr. Steen has operated a borrow pit on approximately 1.5 acres of his 73–acre tract of land. In July of 1987, however, a Sussex County Zoning Inspector issued a zoning violation notice to Mr. Steen for operating an unauthorized borrow pit. Apparently unknown to Mr. Steen, a borrow pit is not permitted in an AR–1 District unless a Conditional Use Permit is first granted by the Sussex County Council.

In order to comply with the Zoning Ordinance, Mr. Steen applied for a Conditional Use Permit which would grant him permission to operate a borrow pit on 10 of his 73 acres. Notice of the application was duly given.

On April 14, 1988, the Sussex County Planning and Zoning Commission ("Planning Commission") held a public hearing on Mr. Steen's application for a Conditional Use Permit. The Planning Commission's hearing began with Lawrence Lank, Director of the Commission, reading favorable comments regarding the application which had been received from the Department of Natural Resources and Environmental Control ("DNREC") and the Department of Transportation ("DelDOT"). Brief oral presentations in favor of the application were then made by Mr. Steen and Jeff Clark of Land Tech, Inc., a land surveying firm. Only one person spoke in opposition to the permit application.

Based on the evidence presented at its public hearing, the Planning Commission made the following findings of fact:

1. The area is predominantly farm land with single family residential uses;

2. Approximately 1.5 acres has been utilized by the applicant for borrow over the last 10 to 12 years and that the borrow pit will be reclaimed under a submitted reclamation plan;

3. The applicant has proposed appropriate measures to control dust and access;

4. The applicant is willing to comply with all requirements of the comprehensive zoning ordinance in reference to borrow pits; and

5. The opposition present was concerned with noise, dust, trespassing by motor vehicles, trash and the health of local residents.

The Planning Commission then unanimously voted to recommend approval of Mr. Steen's application to the County Council upon condition that the borrow pit area be fenced and a gate be installed near the entrance to control and limit access to the pit.

At its May 3, 1988 meeting, the County Council received the Planning Commission's findings of fact and recommendations, and also heard additional evidence in favor of, and in opposition to the application. Mr. Clark and Mr. Steen again made oral presentations detailing Mr. Steen's proposed use of the land and five people spoke in opposition to the application. A petition from thirty-one opponents was also entered into the record. The opponents, who were local area residents, expressed various health, safety and welfare concerns, such as: (1) increased dirt and dust; (2) damage to local roadways caused by increased traffic, especially the large dump trucks to be used to haul borrow from the pit; (3) the safety of children in the area near the pit; and (4) potential threats to local water supplies. The May 3 hearing concluded with the County Council reserving its decision until it received further comment from the DNREC, DelDOT and the Town of Dagsboro.

On July 26, 1988, the County Council held a scheduled meeting, the notice of which included deliberation of Mr. Steen's application as "old business." The Council reviewed the facts previously presented regarding Mr. Steen's application together with additional comments received from DNREC, DelDOT, and the Town of Dagsboro. After reviewing and discussing the information received regarding Mr. Steen's application, the County Council called for the proposed ordinance to be read. At that point, however, the tape recording of the meeting accidentally terminated, thereby making the transcript of the remainder of the meeting incomplete. It is undisputed, however, that a vote was then taken, and Mr. Steen's application was unanimously

denied. The County Council made the following findings of fact in denying Mr. Steen's application for a Conditional Use Permit:

1. The proposed land use does not promote the health, safety and morale of the present and future inhabitants of Sussex County in that the dust, noise, and dirt pollution will result from a change of zone as proposed.

2. The proposed land use does not promote the convenience, order, prosperity, and welfare of the present and future inhabitants of Sussex County in that health hazards to local residents shall be caused by the proposal;

3. Congestion of roads or streets shall be increased by the proposal in that additional truck traffic shall cause a safety hazard to the inhabitants to the areas. Trucks, which are loaded with fill, shall cause unreasonable damage to the roads in the area.

Public notice of the County Council's decision was given on August 3, 1988 and plaintiff subsequently filed this action. Both parties filed cross motions for summary judgment and after briefing on the motions was complete, the defendants filed a Motion To Strike Affidavits filed with Plaintiff's Opening and Reply Briefs.

## II

The plaintiff, in essence, argues that he is entitled to judgment as a matter of law because: (1) his application for a Conditional Use Permit complied with all the requirements of the Sussex County Comprehensive Development Plan, the Sussex County Zoning Ordinance, and the Delaware Code; (2) an applicant for a Conditional Use Permit establishes a *prima facie* right to the permit upon a showing that the proposed use meets the requirements of the Zoning Ordinance, at which time the burden of showing that the permit be denied shifts to the opponents of the application and the opponents did not meet that burden; and (3) the County Council's denial of the Conditional Use Permit was arbitrary and capricious because plaintiff presented competent evidence to sustain the Planning & Zoning Commission's recommendation for approval of plaintiff's application, and there was no competent evidence in opposition to plaintiff's application. Plaintiff also asserts that the defendants' denial of the Conditional Use Permit was an unconstitutional taking of plaintiff's property, entitling plaintiff to damages.

Defendant counters, in essence, that the Council's action was not arbitrary or capricious and therefore cannot be disturbed by this Court and that there has been no taking of plaintiff's property.

## III

A motion for summary judgment will be granted only where no genuine issue of material facts exists and the moving party is entitled to judgment as a matter of law. *Empire of America Relocation Services, Inc. v. Commercial Credit Co.*, Del.Supr., 551 A.2d 433, 435 (1988); *Wilson v. Joma, Inc.*, Del.Supr., 537 A.2d 187, 188 (1988). Summary judgment is employed to avoid a useless trial where there is no issue of material fact. *Bershad v. Curtiss–Wright*, Del.Supr., 535 A.2d 840 (1987); *Nicolet, Inc. v. Nutt*, Del.Supr., 525 A.2d 146 (1987); *H.S. Mfg. Co. v. Benjamin F. Rich Co.*, Del.Ch., 164 A.2d 447 (1960).

## IV

The concept of a conditional use has been developed by land planners to allow for the additional use of land which a legislative body considers to be desirable, necessary, or convenient to the community, or to a substantial segment of the community, although such use may conflict with the uses otherwise permitted in a zone or district. *Bay Colony, Ltd. v. County Council of Sussex County*, Del.Ch., C.A. No. 1001–S, Hartnett, V.C. (Dec. 5, 1984), slip op. at 6 (holding that the conditional use permit granted could only be done by ordinance and that the statutory procedural requirements for the adoption of an ordinance must be followed). See also 3 RATH-KOPF, *The Law of Zoning and Planning* § 41.01. This is because the nature and operation of certain uses tend to generate excessive traffic, to attract large numbers

of people to an area, to have a detrimental effect upon the value or potential development of other properties in the area, or to pose an extraordinary threat of accidents or danger to public health and safety. *Id.*

■ Generally, a conditional use is only permitted, however, where it is desirable or essential to the welfare or the convenience of the public and will neither impair the integrity and character of the zoned district nor be detrimental to the public health, welfare, and morals. See *Bay Colony*, supra at 7; *One Hundred Two Glenstone v. Board of Adjustment*, Mo.Ct.App., 572 S.W.2d 891 (1978). The technique of using a conditional use to provide for flexibility in the zoning scheme generally presupposes that some sort of legislative determination has been made as to which uses are compatible within a given area but require special supervision to insure that there will be no adverse consequences. *Bay Colony*, supra; *Cornell v. County of DuPage*, 58 Ill.App.3d 230, 15 Ill.Dec. 708, 374 N.E.2d 1 (1977).

■ A conditional use (sometimes called a special exception) is not truly an exception to a zoning ordinance, but is a use in compliance with, rather than in variance of, the ordinance and is allowable when the prerequisite facts and conditions specified in the ordinance are found to exist. 101A C.J.S. *Zoning & Land Planning* § 229(b) (1979). If an applicant, therefore, meets the prerequisites specified in the legislation permitting a conditional use, a rebuttable presumption generally arises in favor of the granting of the conditional use permit. *Appeal of Community College of Delaware County*, 435 Pa. 264, 254 A.2d 641, 643 (1969); *Turner v. Hammond*, 270 Md. 41, 310 A.2d 543, 550–51 (1973).

The zoning power in Sussex County is, however, conferred, and subject to, the provisions of 9 *Del.C.*, Ch. 69.

9 *Del.C.* § 6904(a) states:

"Regulations adopted by the county government, pursuant to the provisions of this subchapter, shall be in accordance with the approved comprehensive development plan and shall be designated and adopted for the purpose of promoting the health, safety, morale, convenience, order, prosperity or welfare of the present and future inhabitants of Sussex County, including, amongst other things, the lessening of congestion in the streets or roads or reducing the waste of excessive amounts of roads, securing safety from fire, flood, and other dangers, providing adequate light and air, preventing on the one hand excessive concentration of population or settlement, promoting such distribution of population and such classification of land uses and distributions of land development and utilization as will tend to facilitate and provide adequate provisions for public requirements, transportation, water flowage, water supply, water and air pollution abatement, drainage, sanitation, educational opportunities, recreation, soil fertility, food supply, protection of the tax base, securing economy in governmental expenditures, fostering the State's agricultural and other industries, and the protection of both urban and nonurban development."

Article 9, Section 1, of the Sussex County Zoning Ordinance sets forth the reasons which permit the granting of a Conditional Use Permit:

"The purpose of this Article is to provide for certain uses which cannot be well adjusted to their environment in particular locations with full protection offered to surrounding properties by rigid application of the district regulations. These uses are generally of a public or semipublic character and are essential and desirable for the general convenience and welfare, but because of the nature of the use, the importance of relationship to the Comprehensive Plan, and possible impact, not only on neighboring properties, but on a large section of the county, require the exercise of planning judgment on location and site plan."

Article 9, Section 2, Subsection 2 of the Sussex County Zoning Ordinance imposes the following special requirements which are imposed as conditions upon the approval of borrow pits, the specific conditional use sought:

"Excavation or back-filling of borrow pits, extraction, processing and removal of sand, gravel, or stone, stripping of top soil (but not including stripping of sod), and other major excavations other than for construction of swimming pools and foundations for buildings and other than those approved in connection with a street, subdivision, or planned residential development provided:

(a) No material may be brought from off the site for processing, mixing or similar purposes.

(b) The excavating, extraction, or filling operation shall be controlled to offer reasonable protection to surrounding properties and the neighborhood, particularly as regards to odors, dust, air or water pollution and use of roads or streets providing access to the site.

(c) The location of the excavation, extraction or filling with respect to property lines, the depth of excavation or filling, and relation to the water table or flood criteria, and the slope of the sides of the excavation shall be controlled to prevent a continuing unsightly, hazardous, or wasteful condition of the land.

(d) The borrow pit shall be surrounded by a landscaped unexcavated buffer strip of open space a minimum width of 50 feet along all lot lines or street frontage. The buffer strip shall remain free of any buildings or streets."

Article 9, Section 3 of the Sussex County Zoning Ordinance states:

"A preliminary site plan complying with the requirements of Article 14 shall accompany an application for approval of a conditional use under this Article, together with such information as may be required for a determination of the nature of the proposed use and its effect on the Comprehensive Plan, the neighborhood, and surrounding properties. Procedures for approval of a conditional use and approval and amendment of site plans are contained in Article 14."

Article 14, Section 12 of the Sussex County Zoning Ordinance states: "In interpreting and applying the provisions of this Ordinance, they shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, comfort, prosperity, or general welfare."

■ Contrary to many zoning ordinances, under the Sussex County Ordinance conditional uses are permitted in all districts or zones and, therefore, a conditional use in Sussex County may represent a "substantial change in the provisions of the zoning ordinance which prohibit a particular use in a designated district." *Bay Colony, Ltd. v. County Council of Sussex County,* supra. In *Bay Colony,* I held that the grant of a Conditional Use Permit must be done by ordinance instead of by resolution, stating:

"The Sussex County Comprehensive Zoning Ordinance, unfortunately, ignores the underlying basis for conditional uses and purports to allow certain conditional uses in all zones or districts regardless of the use otherwise permitted in the particular district. Taken to its logical conclusion, the conditional use provisions of the Sussex County Zoning Ordinance override and negate all the other substantive provisions of the zoning ordinance. In this way the same conditional use is allowed in a heavy industrial district, an urban business district, an agricultural district or a residential district.... The granting of a conditional use in Sussex County, therefore, is clearly a major, substantial change in the provisions of the zoning ordinance which prohibit a particular use in a designated district. The fundamental change in use permitted by the issuance of a conditional use permit obviously has the force of law and therefore must be accomplished (if at all) by ordinance."

*Bay Colony,* supra at 7–8. Consequently, because conditional uses in Sussex County are akin to rezonings and because the zoning power is subject to the provisions of 9 *Del.C.,* Ch. 69, an applicant for a Conditional Use Permit in Sussex County must affirmatively show compliance with the prerequisite conditions contained in the Sussex County Zoning Ordinance for a Conditional Use Permit and must also establish that the grant of the Conditional Use Permit

will be consistent with the factors mandated by 9 *Del.C.* § 6904(a).

The factual findings made by the County Council in denying Mr. Steen's application for a Conditional Use Permit are facially responsive to the conditions and criteria in the Sussex County Zoning Ordinance and 9 *Del.C.* § 6904(a), if only barely so.

## V

Mr. Steen, however, asserts that he complied with all the conditions in the Sussex County Zoning Ordinance relating to a Conditional Use for a borrow pit and that the proposed Conditional Use would not be inconsistent with the provisions of 9 *Del.C.* § 6904(a). Consequently, Mr. Steen's main argument is that because he complied with all the requirements of the Sussex County Zoning Ordinance and 9 *Del.C.* § 6904(a) he is entitled to the permit as a matter of law and that the County Council therefore acted arbitrarily and capriciously in denying his application.

The primary issue in this case, therefore, is what standard this Court should apply in reviewing the denial of a Conditional Use Permit by the Sussex County Council. While it is clear that the grant of a Conditional Use Permit is not the same as a rezoning, such decisions in Sussex County, as previously indicated, must be treated as a rezoning for purposes of review by this Court. That scope of review is very limited.

## VI

■■■■■ This Court's role in reviewing a zoning decision of the County Council is limited to a review of the record to ascertain if the statutory procedural mandates have been followed, that the decision is supported by substantial evidence and that it is not arbitrary, capricious or an abuse of discretion. *Carl M. Freeman Associates, Inc. v. Green*, Del.Supr., 447 A.2d 1179 (1982); *Glenn v. Sussex County Council*, Del.Ch., 532 A.2d 80, 83 (1987). See also *Willdel Realty, Inc. v. New Castle County*, Del.Supr., 281 A.2d 612 (1971); *Olney v. Cooch*, Del.Supr., 425 A.2d 610 (1981); *Kreshtool v. Delmarva Power and Light*

*Co.*, Del.Super., 310 A.2d 649 (1973); *Cohen v. Rental Housing Commission*, D.C. Ct.App., 496 A.2d 603 (1985). In addition, the Supreme Court of Delaware has held:

"[Z]oning is a legislative function and a rezoning ordinance is *usually presumed to be valid unless clearly shown to be arbitrary and capricious* because it is not reasonably related to the public health, safety, or welfare. The burden of rebutting the presumption of validity and of showing that a rezoning is arbitrary and capricious is on those challenging the rezoning. However, if the reasonableness of a zoning change is *"fairly debatable"*, the judgment of Council must prevail, and the Court will not substitute its judgment for Council's. The court may set aside arbitrary and capricious zoning action, i.e. one that is not reasonably related to the public health, safety, or welfare. *Willdel Realty, Inc. v. New Castle County*, Del.Supr., 281 A.2d 612, 614 (1971)."

*Tate v. Miles*, Del.Supr., 503 A.2d 187, 191 (1986) (emphasis added). A valid rezoning, however, must be supported by a record sufficient to enable a court to ascertain if the presumption in favor of the County's action arose. *Tate*, supra. See also *Tidewater Utilities, Inc. v. Sussex County Council*, Del.Ch., C.A. No. 1153-S, Jacobs, V.C., 1986 WL 10082 (Sept. 17, 1986), slip op. at 4–5 (granting plaintiff's motion for summary judgment because the County Council failed to articulate reasons for its decision in terms that were responsive to the Zoning Code criteria for conditional use permits); *Sussex County Environmental Concerns Assoc., Inc. v. Rehoboth Mall, L.P.*, Del.Ch., C.A. No. 1101-S, Berger, V.C. (March 20, 1985), slip op. at 10 (granting defendants' motion for judgment on the pleadings because the Council's conclusion that the rezoning was consistent with the Comprehensive Development Plan was amply supported by record evidence).

■■■■ As previously discussed, the requirements for a rezoning are also applicable to County Council decisions granting or denying conditional use permits. See also *Tidewater Utilities*, supra; *Sears v. Levy*

*Court of Kent County*, Del.Ch., C.A. No. 465–K, Berger, V.C., 1986 WL 10085 (Sept. 15, 1986) (holding that the *Tate* ruling applies to decisions by a zoning body denying rezoning applications as well as to decisions granting them); *Bay Colony*, supra. It is, therefore, not this Court's function to weigh the conflicting testimony and form its own judgment as to the advisability of the denial of a conditional use permit. See *Sussex County Environmental Concerns Assoc., Inc. v. Rehoboth Mall, L.P.*, supra.

## VII

■ After reviewing the record, I am satisfied that there are sufficient facts in the record to show that the County Council had sufficient reason to deny the Conditional Use Permit. There was considerable neighborhood opposition to the plaintiff's application for a Conditional Use Permit to use 10 acres of his land as a borrow pit, despite the fact that Mr. Steen had illegally operated a borrow pit on 1.5 acres of his land for the past 8–12 years without apparent complaint. The opponents expressed various health, safety and welfare concerns, such as: (1) increased dirt and dust; (2) damage to local roadways caused by increased traffic, especially the large dump trucks used to haul borrow from a pit; (3) the safety of children in the area near the pit; and (4) potential threats to local water supplies.

The plaintiff argued that there is no record evidence in opposition to plaintiff's application, that the County Council based its decision on layman opinion and unsubstantiated fears, and that the offering of opinion only does not constitute probative or substantial evidence.

The fact that the opponents to Mr. Steen's application did not present expert testimony regarding the proposed use, however, is not controlling. The Council could consider "the evidence submitted by the persons most familiar with the neighborhood insofar as it bears on the objective factors important to the future of the area affected by the proposed use." *Anderson v. Peden*, 284 Or. 313, 587 P.2d 59 (1978). See also *Sears v. Levy Court of Kent*

*County*, Del.Ch., C.A. No. 465–K, Berger, V.C. (Sept. 15, 1986) (Court upheld denial of Conditional Use Permit where Levy Court based its denial on substantial neighborhood opposition).

Plaintiff has not made any showing from which the Court could reasonably conclude that the County Council's denial of Mr. Steen's application was arbitrary and capricious; that is, not reasonably related to the public health, safety or welfare. The record before the Council was sufficient (if somewhat sparse) and the Council's findings of fact in denying the Conditional Use Permit indicate that it considered the appropriate factors in reaching its decision.

Defendant is therefore entitled, as a matter of law, to dismissal of plaintiff's challenge to the denial of a Conditional Use Permit.

## VIII

■ Plaintiff also argues that the Council's denial of a Conditional Use Permit amounted to an unconstitutional temporary taking of his property, entitling him to damages. Plaintiff's argument is without merit.

The Supreme Court of the United States has stated that "temporary" regulatory takings which "deny a landowner *all* use of his property, are not different in kind than permanent takings, for which the Constitution clearly requires compensation." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 318, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) (emphasis added). The Supreme Court, however, expressly limited its holding in *First English Evangelical* to cases in which a regulation denied a plaintiff *all* use of his or her property. 482 U.S. at 321–22, 107 S.Ct. at 2389–90.

Here, Mr. Steen was not deprived of *all* uses of his property, because the Council's denial of a Conditional Use Permit only related to use of the 10 acres in question as a borrow pit. Mr. Steen's land is presently zoned AR–1, and may be used for legitimate farming or residential purposes. Mr. Steen's prior use of a portion of his land as

**650**

a borrow pit is of no consequence, because that prior use was illegal. The excavated pit area was created by Mr. Steen, and if it is not now practical to develop that acreage for legitimate farming or residential purposes, the loss, if any, clearly falls upon Mr. Steen. See *de Botton v. Marple Township*, 689 F.Supp. 477, 481 (E.D.Pa.1988). See also *Bello v. Simmons Park Properties, Inc.*, 840 F.2d 1124, 1131 (3d Cir.), *cert. denied sub nom., Bello v. Walker*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

### IX

The County Council's Motion To Strike Affidavits filed by plaintiff in his Opening and Reply Briefs must be denied. While this Court is very reluctant to allow the zoning process to be supplemented after-the-fact with affidavits, in this case the County Council solicited information regarding Mr. Steen's application from DNREC, DelDOT and the Town of Dagsboro after the May 3 Council meeting. Plaintiff therefore should have been given an opportunity to respond.

The affidavits, however, do not contain any information which could change the result.

### X

Accordingly, plaintiff's motion for summary judgment is denied and defendants' cross-motion for summary judgment of dismissal is granted.

IT IS SO ORDERED.